**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARY CSANYI, a single woman, | No. CV 03-1987 PHX JAT |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| REGIS CORPORATION; SUPER CUTS, | |
| Defendants. | |

On June 7, 8, 9, and 13, 2006, the Court presided over the bench trial in this matter. In her Complaint, Plaintiff Mary Csanyi asserted the following claims against Defendants Regis Corporation[1] and SuperCuts: 1) age discrimination in violation of 29 U.S.C. § 623(a)(1); 2) national origin and race discrimination in violation of 42 U.S.C. § 2000e-2(a)(1); 3) violation of the Family Medical Leave Act; and 4) retaliation in violation of 42 U.S.C. § 2000(e)-3(a).[2] Plaintiff seeks compensatory damages, liquidated damages, damages for emotional distress, punitive damages, and attorney's fees. Following the bench trial, the Court hereby finds and concludes as follows:

---

[1] Regis Corporation was dismissed upon oral motion of its counsel at the completion of the trial.

[2] The retaliation claim was dismissed upon oral motion of defense counsel after Plaintiff rested.

1

A. **FINDINGS OF FACT**

1. Plaintiff was born in Bolivia.
2. Plaintiff speaks with an accent.
3. At all relevant times hereto, Plaintiff was over 40 years of age.
4. Plaintiff began working for SuperCuts in February 1999 at the SuperCuts store located in Scottsdale at Indian Bend Road ("Indian Bend Store").
5. In March 2003, Plaintiff received an award for the highest Paul Mitchell sales for the Indian Bend Store.
6. Plaintiff was a shift manager for the Indian Bend Store.
7. During the time there was no store manager for the Indian Bend Store, Plaintiff performed some store manager functions.
8. Two Russian hairstylists, Nina Barayeva and Larisa Baturow, worked at the Indian Bend Store with Plaintiff.
9. In early 2003, Maudie Kappel became the Area Supervisor for the SuperCuts stores in the northwest Phoenix, Arizona metropolitan area.
10. The Indian Bend Store came under Ms. Kappel's supervision in May 2003.
11. Prior to May 2003, Ms. Kappel had neither heard of nor met Plaintiff.
12. In May 2003, Jessica Nyman was appointed Store Manager at the Indian Bend Store.
13. Within approximately two months after becoming Store Manager of the Indian Bend Store, Ms. Nyman requested and was granted a transfer to the Fountain Hills Store.
14. Ms. Nyman requested the transfer because of Plaintiff's demeaning remarks about Russians' bathing habits and religion, Plaintiff's challenges to Ms. Nyman's authority, and customer complaints.
15. Ms. Nyman said it was impossible to work with Plaintiff.
16. Plaintiff complained to Ms. Kappel that Ms. Nyman just sat out back, smoked cigarettes, and needed to take a shower.

17. On July 1, 2003, Cara Smith became Store Manager of the Indian Bend Store.
18. Ms. Kappel did not warn Ms. Smith about Plaintiff.
19. Ms. Smith had difficulty understanding Plaintiff because of her accent.
20. During the time Ms. Smith was Store Manager, she took multiple complaints about Plaintiff from co-workers and customers and personally observed Plaintiff's poor behavior with her colleagues and rudeness to customers.
21. These complaints resulted in the issuance of Management Forms (counseling/warning/disciplinary forms) to Plaintiff.
22. Plaintiff insulted her two co-workers whose national origin is Russian. Specifically, on or about July 8, 2003, Plaintiff told Ms. Barayeva, who requested a SuperCuts employment application for her son, that "we" do not want any more Russians working at SuperCuts. Ms. Barayeva complained to Ms. Smith and told Ms. Smith that she could not continue to work with Plaintiff.
23. Ms. Smith wrote Plaintiff up for the incident. When Ms. Smith attempted to talk to Plaintiff about the incident, Plaintiff yelled at Ms. Smith, became aggressive, and accused Ms. Barayeva of lying.
24. On or about July 29, 2003, Ms. Baturow complained that Plaintiff was putting Russians down in front of customers, saying that Russians are "pigs" and that they need to go back to where they came from. Ms. Baturow said she was angry and hurt and did not understand why Plaintiff was treating her in that manner.
25. Ms. Smith wrote Plaintiff up for the incident. However, Ms. Smith did not attempt to discuss the incident with Plaintiff because Ms. Baturow said she was scared of Plaintiff and would quit if Plaintiff was told of the complaint.
26. On July 25, 2003, a customer complained that Plaintiff had insulted him by saying that she felt sorry for him because no one would ever marry him with all his tattoos.

27. Ms. Smith wrote Plaintiff up for the incident. When Ms. Smith attempted to speak with Plaintiff about the incident, Plaintiff became aggressive and screamed.

28. On July 31, 2003, Plaintiff yelled at Ms. Smith and a customer that they were wrong about hair coloring. The customer appeared shocked, causing Ms. Smith to apologize and give the customer a discount on future hair services.

29. On August 4, 2003, Smith received a complaint from a customer that Plaintiff had given him a bad haircut. Ms. Smith fixed the haircut at no charge. Ms. Smith attempted to speak with Plaintiff about the incident and Plaintiff "went off."

30. On August 5, 2003, Ms. Smith received another complaint from a customer that Plaintiff had given him a bad haircut and was very short and rude with him, telling him she had to hurry up because it was almost time for her to go home and there were still more haircuts to do.

31. Ms. Smith wrote up Plaintiff for the incident. When Ms. Smith tried to talk to Plaintiff about this complaint and about Plaintiff's poor customer service, in general, Plaintiff told Ms. Smith that she did not like Ms. Smith and that Ms. Smith was a bad manager.

32. Ms. Smith left the client complaint with the client's signature on it for Plaintiff to sign. When Ms. Smith returned to the store the next day, the form was gone.

33. During the time Ms. Smith was manager at the Indian Bend Store, Plaintiff treated her disrespectfully, tried to boss her around, and tried to intimidate her. Plaintiff also told Ms. Smith that she was too young and inexperienced to be a store manager.

34. Ms. Smith reported this treatment to Ms. Kappel, and told Ms. Kappel that Plaintiff was too hard to manage because Plaintiff wanted to do what Plaintiff wanted to do.

4

35. Ms. Smith told Ms. Kappel that she could no longer work with Plaintiff.

36. On or about August 5, 2003, Ms. Smith told Ms. Kappel that she wanted to step down as store manager of the Indian Bend Store and move to a different store. Ms. Kappel granted Ms. Smith's request. Thereafter, Ms. Smith worked in different stores assisting as an extra hair stylist until she was transferred to another SuperCuts location.

37. As a result of losing two Store Managers because of Plaintiff's conduct, as reflected in the manager, co-worker and customer complaints, Ms. Kappel made the decision to transfer Plaintiff to the SuperCuts store located on Bell Road ("Bell Road Store").

38. In making the decision to transfer Plaintiff, Ms. Kappel also reviewed and considered co-employee and customer complaints against Plaintiff that were written up in 2000 and 2001 as they showed a pattern of behavior.

39. The decision to transfer Plaintiff was not based on any animus toward Plaintiff or other considerations based on Plaintiff's age, race, or national origin.

40. Ms. Smith did not request that Plaintiff be transferred.

41. Ms. Kappel selected the Bell Road Store as the transfer location because the Bell Road Store's volume was able to accommodate Plaintiff's set schedule and because Plaintiff required a more experienced and stronger manager, such as Michelle Ortega who managed the Bell Road Store.

42. After Plaintiff was transferred to the Bell Road Store, she retained the same schedule and compensation.

43. After the transfer, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

44. Plaintiff worked at the Bell Road Store for less than two weeks.

45. On September 25, 2003, Plaintiff applied for and was granted FMLA leave beginning retroactively on September 18, 2003 and continuing until October

18, 2003.

46. Plaintiff's FMLA leave was extended until November 3, 2003.

47. For October 2003, Plaintiff paid to SuperCuts $186.00 for her portion of her health insurance premium. Plaintiff did not pay her portion of her premium in any subsequent months while on FMLA leave.

48. The Certificate of Group Health Plan Coverage issued on behalf of Regis Corporation shows that Plaintiff's health insurance coverage ended on September 30, 2003; however, Plaintiff's records from Scottsdale Psychiatric Service show insurance adjustments for services rendered in and after October 2003.

49. After her FMLA leave expired, Plaintiff did not notify SuperCuts she quit. Plaintiff simply failed to return to work at SuperCuts.

50. Plaintiff never complained to Ms. Kappel about Ms. Smith making inappropriate comments about Plaintiff's age, race, national origin, or accent.

51. With respect to Plaintiff's testimony she was the victim of age, race, or national origin discrimination, the Court finds her testimony not credible. Even if taken at face value, the Court finds the testimony does not reflect discriminatory animus or prove the transfer was motivated by discriminatory animus.

**B.   CONCLUSIONS OF LAW**

1. This Court has federal question jurisdiction over this case under 28 U.S.C. §§ 1331, 1343.

2. It is an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1).

3. "[A]n unlawful employment practice is established when the complaining party demonstrates that race . . . or national origin was a motivating factor for

6

|   |   |   |
|---|---|---|
| 1 | | any employment practice, even though other factors also motivated the |
| 2 | | practice." 42 U.S.C. § 2000e-2(m). |
| 3 | 4. | To establish a *prima facie* case of national origin or race discrimination, Plaintiff must show: (1) she belongs to a protected class; (2) she was performing satisfactorily; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside of her protected class were treated more favorably. *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). |
| 10 | 5. | If Plaintiff establishes a *prima facie* case of national origin or race discrimination surrounding her transfer to the Bell Road Store, and SuperCuts subsequently establishes a legitimate, non-discriminatory reason for the transfer, then the presumptions and burdens in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), are no longer relevant. *Sanghvi v. City of Claremont*, 328 F.3d 532, 537 (9th Cir. 2003). Thereafter, "the fact finder need only address the ultimate question of discrimination." *Id.* (citations omitted). |
| 18 | 6. | It is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). |
| 21 | 7. | To establish a violation of the Age Discrimination in Employment Act ("ADEA") under the disparate treatment theory of liability, Plaintiff must first establish a *prima facie* case of age discrimination. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1280-81 (9th Cir. 2000) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). |
| 26 | 8. | To establish a *prima facie* case of age discrimination, Plaintiff must demonstrate that she (1) was at least age 40; (2) was performing her job satisfactorily; (3) suffered some adverse employment action; and (4) was |

7

1  replaced by substantially younger employees with equal or inferior
2  qualifications. *Id.* at 1281 (citing *Nidds v. Schindler Elevator Corp.*, 113
3  F.3d 912, 917 (9th Cir. 1997).

4  9.  If Plaintiff establishes a *prima facie* case of age discrimination, then the
5      burden shifts to SuperCuts to articulate a legitimate, nondiscriminatory
6      reason for its employment decision. Thereafter, in order to prevail, Plaintiff
7      must demonstrate that SuperCuts' reason for the adverse employment
8      decision is a pretext for another discriminatory motive. *Id.* (quoting *Wallis
9      v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). Despite the burden
10     shifting, the ultimate burden of proof remains on Plaintiff to show that
11     SuperCuts intentionally discriminated because of her age. *Id.* (citing *Rose v.
12     Wells Fargo & Co.,* 902 F.2d 1417, 1420-21 (9th Cir. 1990).

13 10. When an employee takes leave under The Family and Medical Leave Act,
14     ("FMLA"), the employer must "maintain coverage under any 'group health
15     plan' . . . for the duration of such leave at the level and under the conditions
16     coverage would have been provided if the employee had continued in
17     employment continuously for the duration of such leave." 29 U.S.C. §
18     2614(c)(1).

## C. RESULT

Plaintiff has failed to establish that her transfer was motivated, in whole or in part, by her age, race or national origin. The evidence shows that Plaintiff was transferred to the Bell Road Store because of her inability to get along with her co-workers, her lack of respect for management, and customer complaints. In sum, Plaintiff was transferred because she was not able to perform her job satisfactorily and required the oversight of an experienced and strong manager. Plaintiff's March 2003 sales award and the fact that she was a shift manager who performed some store manager duties while the Indian Bend Store lacked a store manager do not change this finding.

Plaintiff also has failed to establish that SuperCuts violated the Family and Medical

Leave Act ("FMLA"). First, while the Certificate of Group Health Plan Coverage issued on behalf of Regis Corporation shows that Plaintiff's health insurance coverage ended on September 30, 2003, while Plaintiff was on FMLA leave, Plaintiff's records from Scottsdale Psychiatric Service show insurance adjustments for services rendered in and after October 2003. Thus, Plaintiff has failed to prove that her health insurance was terminated while she was on FMLA leave. Second, a condition under which health insurance coverage would have been provided was Plaintiff's continued payment of her portion of the health insurance premium. While Plaintiff paid her October 2003 health insurance premium, Plaintiff presented no evidence that she paid or attempted to pay her premium in any subsequent months while on FMLA leave, thus relieving SuperCuts of its duty to maintain insurance coverage. *See* 29 U.S.C. § 2614(c)(1).

**D.  JUDGMENT**

Based on the foregoing,

**IT IS ORDERED** that the Clerk of Court shall enter judgment for Defendants and against Plaintiff on all claims.

DATED this 27th day of June, 2006.

_____
James A. Teilborg
United States District Judge